IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LISA HARTMAN,
    *Plaintiff*,

v.

UNIVERSITY OF MARYLAND AT
BALTIMORE.
    *Defendant*.

Civil Action No. ELH-10-2041

**MEMORANDUM**

On July 27, 2010, Lisa L. Hartman, plaintiff, brought suit against her former employer, the University of Maryland at Baltimore ("UMB"), defendant, alleging discrimination in employment on the basis of age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* (Count I); disability discrimination, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111 *et seq.* (Count II); and for violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq* (Count III). *See* Complaint (ECF 1). Following discovery, UMB moved for summary judgment (ECF 28), arguing that plaintiff failed to exhaust administrative remedies and that plaintiff's claims lacked merit. By a Memorandum Opinion and Order of August 14, 2012 (ECF 50, 51), this Court denied UMB's summary judgment motion.[1]

Trial was originally scheduled for February 11, 2013. However, at the request of counsel, trial was postponed until October 21, 2013, to permit the parties to engage in settlement discussions. ECF 63. But, those discussions were not fruitful. *See* ECF 68.

---

[1] The factual background of this case is set forth at length in my Memorandum Opinion of August 14, 2012 (ECF 50), which I incorporate here by reference. Accordingly, I will not repeat it.

As the October 2013 trial date approached, the parties made several submissions, in accordance with the Court's Scheduling Order (ECF 67). The submissions included a motion in limine, filed on September 25, 2013 (ECF 76); proposed voir dire, filed on September 26, 2013 (ECF 79); a proposed special verdict form, filed on September 26, 2013 (ECF 80); proposed jury instructions, filed on September 27, 2013 (ECF 81); and a proposed pretrial order, filed on October 1, 2013 (ECF 82).

On October 1, 2013—more than three years after the Complaint was filed and less than three weeks before trial was set to begin—UMB filed a second motion for summary judgment ("MSJ," ECF 84), challenging, for the first time, plaintiff's ADEA, ADA, and FMLA claims based on Eleventh Amendment sovereign immunity. The Eleventh Amendment bars suits for damages against a state in federal court unless the state has waived its sovereign immunity or Congress has abrogated its immunity. *Virginia Office for Prot. & Advocacy v. Stewart*, __ U.S. __, 131 S. Ct. 1632, 1638 (2011).

In particular, UMB asserted that it is a constituent institution of the University System of Maryland ("USM"), Md. Code (2008 Repl. Vol., 2013 Supp.), § 12-101(b)(5)(i) of the Education Article, and a unit of State government, with its authority vested in its Board of Regents. *Id.* § 12-102. Moreover, according to UMB, the Board of Regents is an arm of Maryland State government for purposes of sovereign immunity. *See Stern v. Bd. Of Regents*, 380 Md. 691, 846 A.2d 996 (2004).[2]

During a telephone conference with counsel on October 2, 2013, I expressed my complete dismay at UMB's belated, eleventh hour filing of a summary judgment motion based

---

[2] Accordingly, when discussing sovereign immunity, I often refer to UMB and the Board of Regents as the "State."

on sovereign immunity – long after the expenditure of considerable resources by the parties and by the court in connection with this case. In a letter to counsel confirming the substance of the telephone conference, ECF 86, I asserted: "[T]here is no excuse for such a belated filing by the State, given that this issue should have been identified early in the litigation." However, I also noted that the MSJ appeared to have merit. Because the defense of sovereign immunity is not subject to waiver, *see Kitchen v. Upshaw*, 286 F.3d 179, 183 (4th Cir. 2002), I postponed the trial date to March 3, 2014, to allow plaintiff and the court time to consider the MSJ. *Id.*

Thereafter, plaintiff submitted an opposition to the MSJ ("Hartman Opp.," ECF 87), along with a Motion for Leave to file Amended Complaint ("Motion for Leave," ECF 91), an Amended Complaint ("Am. Comp.," ECF 91-2), and a reply in support of her Motion for Leave ("Hartman Reply," ECF 106), with an exhibit (ECF 110). UMB filed an opposition to the Motion for Leave ("UMB Opp.," ECF 92) and a reply in support of its MSJ ("UMB Reply," ECF 93), with an exhibit (ECF 95). No hearing is necessary to resolve the motions. *See* Local Rule 105.6. For the reasons that follow, I will grant plaintiff's Motion for Leave and I will grant defendant's MSJ.

*Motion for Leave to Amend the Complaint*

Plaintiff seeks leave to amend her complaint by (1) adding a disability discrimination claim under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; (2) adding an age discrimination claim under Md. Code (2009 Repl. Vol., 2011 Supp.), § 20-606 of the State Government Article ("S.G.");[3] (3) specifying the injunctive relief which she seeks in regard to

---

[3] S.G. § 20-606 provides, in relevant part: "(a) An employer may not: (1) fail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of: (i) the individual's

her ADA, ADEA, and FMLA claims; and (4) modifying the *ad damnum* clause. *See* Motion for Leave ¶¶ 4–5. Plaintiff does not seek to add or alter any factual allegations. Rather, the amendments primarily relate to the legal theories on which she intends to proceed, prompted by the recent MSJ filed by the defense.

UMB opposes the Motion for Leave on two grounds.[4] First, UMB avers that the Motion should be denied in full because plaintiff has not shown good cause for amending her complaint after the deadline of April 7, 2011, set by the Court in the Scheduling Order docketed on February 28, 2011. *See* ECF 13. According to UMB, "there is no reason that the proposed amendments could not have been made earlier," and therefore, no good cause exists. Second, UMB contends that plaintiff's addition of a state law age discrimination claim should be rejected because "the legislature has not waived the State's immunity for suits brought . . . in federal court." UMB Opp. at 1–2.

The parties dispute whether the governing standard for the Motion to Leave is Fed. R. Civ. P. 15, which provides that "[t]he court should freely give leave when justice so requires," or Fed. R. Civ. P. 16, which provides: "A schedule may be modified only for good cause and with the judge's consent." I need not resolve this dispute because I find that good cause exists even under Rule 16's more stringent standard.

As to the Rehabilitation Act, plaintiff seeks to add a claim under that statute that is substantively identical to her original claim under the ADA. "[D]espite the different language

---

race, color, religion, sex, age, national origin, marital status, sexual orientation, genetic information, or disability unrelated in nature and extent so as to reasonably preclude the performance of the employment."

[4] UMB does not argue that plaintiff's proposed claims are barred by the statute of limitations.

the [ADA and Rehabilitation Act] employ, they require a plaintiff to demonstrate the same elements to establish liability." *Halpern v. Wake Forest Univ. Health Sciences*, 669 F.3d 454, 461 (4th Cir. 2012). To be sure, in her initial complaint, plaintiff *could* have included duplicative claims under the Rehabilitation Act. But, she had no reason to do so. Had UMB timely moved to dismiss the complaint on grounds of sovereign immunity, plaintiff surely would have sought to amend her complaint at that time to add comparable claims under alternative statutes. And, the Rehabilitation Act certainly would not have been subject to dismissal under the Eleventh Amendment. This is because a State that accepts federal funding under the Rehabilitation Act thereby waives its sovereign immunity in suits brought under that Act. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 493 (4th Cir. 2005). And, UMB concedes that it has accepted federal funding.

In the absence of a claim of sovereign immunity as to the ADA claim, plaintiff had no reason to include a duplicative cause of action under the Rehabilitation Act. Moreover, no conceivable prejudice exists to UMB as to the proposed Rehabilitation Act claim, because it relies on precisely the same facts and virtually identical legal elements as those embodied in the original ADA claim. *See Halpern*, 669 F.3d at 461.

Notably, the State has never made clear why it waited more than three years to raise a defense that could have (and should have) been raised more expeditiously. Nor was plaintiff required to have anticipated defendant's belated assertion of the defense of sovereign immunity. Indeed, defendant filed a prior summary judgment motion (ECF 28), attacking the merits of plaintiff's ADA, ADEA, and FMLA claims, without any mention of sovereign immunity. As a result, the court spent hours resolving the summary judgment motion, culminating in a 33-page

Memorandum Opinion issued in August 2012. *See* ECF 50. In the face of the defendant's conduct, it is challenging to understand its contention that plaintiff failed to demonstrate good cause for her belated motion to amend to add a claim under the Rehabilitation Act. To the contrary, I find that plaintiff has shown ample good cause to amend her complaint on this basis.

The same good cause analysis holds true as to the proposed claim of age discrimination under Maryland Law. It is substantively equivalent to the federal ADEA claim. And, UMB acknowledges that the Maryland legislature has waived the State's sovereign immunity for state law employment discrimination cases brought in *state court*. Nevertheless, UMB insists that the legislature has not waived sovereign immunity for such suits brought in *federal court*. UMB Opp. at 4. I disagree.

The Supreme Court has instructed that the test for determining whether a State has waived its immunity from suit in federal court is a "stringent" one. *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 240 (1985). Under *Atascadero*, courts may find that a state has waived its Eleventh Amendment immunity "only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." *Id.* (internal quotation marks and alteration omitted); *see also Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 250–51 (4th Cir. 2012).

The state's waiver of sovereign immunity in employment discrimination cases appears in Md. Code (2009 Repl. Vol., 2011 Supp.), § 20-903 of the State Government Article. Title 20 of the State Government Article is entitled "Human Relations." S.G. § 20-903. It provides, *id.*: "The State, its officers and its units may not raise sovereign immunity as a defense against an award in an employment discrimination case under this title." Despite the provision's

unqualified language, UMB maintains that the waiver is limited to proceedings in Maryland courts. In support of this proposition, UMB cites a venue provision in Title 20's enforcement section, which states, S.G. § 20-1013(b): "<u>Venue.</u> – A civil action under this section shall be filed in the circuit court for the county where the alleged unlawful employment practice occurred."

According to UMB, this provision "mandates that a civil action brought [under Title 20] be brought in a Maryland circuit court." UMB Opp. at 5. And, because the waiver of sovereign immunity in S.G. § 20-903 applies only in cases brought "under this title," it argues that the State has waived immunity only in those cases brought in a Maryland circuit court. UMB Opp. at 6.

UMB's argument suffers from at least two infirmities. First, the argument's premise is flawed. It cannot be the case that the cited venue provision "mandates that a civil action brought to enforce § 20-606 be brought in a Maryland circuit court." The venue provision explicitly applies to all cases brought under Title 20, regardless of whether the government is a defendant. For example, Title 20 includes prohibitions on discrimination in employment, housing, leasing of commercial property, and places of public accommodation. If UMB's interpretation were correct, federal courts would be unable to entertain any of these claims. But, federal courts in this district have adjudicated countless cases in which plaintiffs asserted state law discrimination claims. *See, e.g.*, *Miles v. DaVita Rx, LLC*, Civ. No. 12-854, 2013 WL 4516468 (D. Md. Aug. 23, 2013) (adjudicating state law employment discrimination claim); *Jarvis v. Staples, Inc.*, Civ. No. 10-244, 2010 WL 4942010 (D. Md. Nov. 30, 2010), *aff'd*, 426 F. App'x 193 (4th Cir. 2011) (adjudicating claim alleging discrimination in the making of business contracts in violation of state law); *Mobley v. Rossell*, 297 F. Supp. 2d 835 (D. Md. 2003) (adjudicating state law housing

discrimination claim); *see also Allen v. Dorchester Cnty., Md.*, Civ No. 11-01936, 2013 WL 5442415 (D. Md. Sept. 30, 2013) (adjudicating state law employment discrimination claim). Thus, S.G. § 20-1013(b) is best read not as creating a jurisdictional bar to federal court adjudication of cases under Title 20, but rather as establishing the proper venue for Title 20 cases filed in state court.

Second, examination of other waivers of sovereign immunity in the Maryland Code make clear that the waiver of sovereign immunity in S.G. § 20-903 applies in both state and federal court. In other contexts, the Maryland legislature explicitly limited its waiver of sovereign immunity to cases filed in state court. For example, Maryland's waiver of sovereign immunity in tort cases, S.G. § 12-104, provides that "the immunity of the State and of its units is waived as to a tort action, *in a court of the State*, [provided that its liability may not exceed $200,000]." *Id.* (emphasis added). Likewise, Maryland's waiver of sovereign immunity in contract actions, S.G. § 12-201, provides that "the State, its officers, and its units may not raise the defense of sovereign immunity in a contract action, *in a court of the State*, based on a written contract that an official or employee executed for the State . . . ." *Id.* (emphasis added). Similarly, the legislature has provided that state personnel "are immune from suit *in courts of the State* and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence . . . ." Md. Code (2013 Repl. Vol., 2013 Supp.), § 5-522 of the Courts and Judicial Proceedings Article ("C.J.") (emphasis added).

By contrast, the waiver of sovereign immunity at issue here does not contain any such limitation. Rather, it simply provides, without qualification, that the State "may not raise

sovereign immunity as a defense against an award in an employment discrimination case under this title." S.G. § 20-903. The Maryland legislature knows how to limit its waiver of sovereign immunity; it has simply chosen not to do so in the context of discrimination cases. *Cf. Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 339 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest.").

The Maryland Court of Appeals conducted a similar analysis in determining whether C.J. (2006 Repl. Vol.), § 5-518(c) waived the Baltimore County Board of Education's immunity from suit in federal court for claims less than $100,000. *See Bd. of Educ. of Baltimore Cnty. v. Zimmer-Rubert*, 409 Md. 200, 203, 973 A.2d 233, 235 (2009). At the time, C.S. § 5-518(c) provided: "A county board of education may not raise the defense of sovereign immunity to any claim of $100,000 or less." The Court of Appeals acknowledged and applied the *Atascadero* stringent test, *see* 473 U.S. 234, *supra*, and concluded that this language constituted a waiver of sovereign immunity in both state and federal courts. *See Zimmer-Rubert*, 409 Md. at 215, 973 A.2d at 242; *see also Lee-Thomas*, 666 F.3d at 253 (discussing *Zimmer-Rubert* and deferring to the Maryland Court of Appeals's interpretation). The Maryland Court of Appeals contrasted the legislature's use of the term "any claim" in C.J. § 5-518(c) with S.G. § 2-201's more narrow waiver of sovereign immunity "in a court of the State," reasoning that "if the General Assembly intended to preserve the State's Eleventh Amendment protection, that body knew how to do so by merely limiting the State's liability to any claim brought 'in a court in this State,' or words to that effect." *Zimmer-Rubert*, 409 Md. at 216, 973 A.2d at 243.

The same analysis applies here. The Maryland legislature opted not to limit its waiver of sovereign immunity in S.G. § 20-903 to suits brought in state court. Accordingly, I find that the State has waived its sovereign immunity with regard to claims arising under S.G. § 20-606, whether in federal or state court. Therefore, I will grant plaintiff's Motion for Leave, in its entirety.

*Motion for Summary Judgment*

In its MSJ, UMB asserted the defense of sovereign immunity against plaintiff's claims for damages under the ADEA, ADA, and FMLA. As noted, the Eleventh Amendment bars suits for damages against a state in federal court unless the state has waived its immunity or Congress has abrogated its immunity. Plaintiff does not contend that Maryland has waived its sovereign immunity in cases arising under the ADEA, ADA, or FMLA. *See* Hartman Opp. at 3. And, the Supreme Court has squarely held that Congress did not abrogate the states' immunity from suit under the provisions of those statutes relied upon by plaintiff. *See Kimel v. Florida Board of Regents*, 528 U.S. 62 (2000) (ADEA); *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356 (2001) (Title I of the ADA); *Coleman v. Court of Appeals*, __ U.S. __, 132 S. Ct. 1327 (2012) (FMLA's self-care provision). Thus, plaintiff's claims for damages under the ADEA, ADA, and FMLA are barred by sovereign immunity.

However, plaintiff's Amended Complaint also requests injunctive relief (*i.e.* reinstatement to her position) under the ADEA, ADA, and FMLA. According to plaintiff, such prospective injunctive relief "is not subject to the Eleventh Amendment's bar against the recovery of damages against a State or a state related entity." Hartman Opp. at 6 (citing *Ex parte Young*, 209 U.S. 123 (1908)).

Hartman is correct that *Ex parte Young* creates an exception to sovereign immunity applicable in suits for prospective injunctive relief. *See generally Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). However, the *Young* exception applies only in "suits seeking declaratory and injunctive relief *against state officers in their individual capacities.*" *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997) (emphasis added). The doctrine does not apply in suits against the state or a state entity, even when those suits seek prospective injunctive relief. *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 781–82 (1978) (per curiam); *see generally* Richard H. Fallon, Jr., *et al.*, Hart & Wechsler's The Federal Courts and the Federal System 892 (6th ed. 2009).

Here, plaintiff has not sued any individuals. Rather, she has sued only the University itself. Accordingly, the *Young* exception does not apply. It follows that plaintiff's claims for injunctive relief under the ADEA, ADA, and FMLA are barred by the Eleventh Amendment. Therefore, I will grant summary judgment in favor of UMB on those claims.

To be clear, plaintiff's claims under Maryland discrimination law and the Rehabilitation Act remain viable. And, those claims are largely duplicative of the ADEA and ADA claims on which I have granted summary judgment for the defendant.

**Conclusion**

For the foregoing reasons, plaintiff's Motion for Leave (ECF 91) is GRANTED, and defendant's Motion for Summary Judgment (ECF 84) is GRANTED. An Order follows.

Date: December 20, 2013         /s/
                                Ellen Lipton Hollander
                                United States District Judge